KATHERINE L. MCMANUS *vs.* PEERLESS CASUALTY COMPANY.

Cumberland.   Opinion October 21, 1915.

*Application.        Beneficiary.        Contingent Right.        Evidence.*
*False Answers.        Insurance.        Occupation.*
*Vested Interest.        Warranties.*

The policy in suit provides that "The consent of the beneficiary shall not be requisite to the surrender of this policy nor to a change of beneficiary."
*Held:*
1. That under the terms of said policy, the beneficiary, who is the plaintiff, does not have a vested interest.
2. That the applications of the insured to the Prudential Insurance Company, which were offered in evidence and excluded, should have been admitted.

On motion and exceptions by the defendant. Motion not considered. Exceptions sustained.

Action on a policy of insurance issued by defendant to George M. McManus, late of Brunswick, deceased, the plaintiff being the beneficiary named in said policy. Plea, the general issue, with brief statement. The jury returned a verdict for plaintiff, and defendant filed a motion for a new trial and had exceptions allowed to the exclusion of certain evidence.

The case is stated in the opinion.

*Clement F. Robinson and Arthur L. Robinson,* for plaintiff.

*Charles G. Keene, Barrett Potter, and Anthoine & Anthoine,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, JJ.

SPEAR, J. This is an action in assumpsit on a policy of insurance issued by the defendant company to George M. McManus, late of Brunswick whose widow and beneficiary is the plaintiff. The policy provides for the payment of five thousand dollars to the beneficiary in the event of the death of the insured by accident. The insured died on February 21, 1914, as a result of an accident which occurred cn February 2, 1914, as admitted by the defendant, but the defendant disputed liability because of certain statements appearing in the application annexed to the policy.

As the exceptions are decisive in this case, there is no occasion to consider the motion. The main question in the exceptions, was whether McManus' occupation was truly stated in the application. The statements in the application were warranted by him "to be complete and true and material and binding" and the warranty was reaffirmed in the policy and a copy of the application was endorsed on the policy. Accordingly, untrue answers in the application would make the policy void. *Johnson* v. *Insurance Company,* 83 Maine, 182; *Boston* v. *Insurance Company,* 89 Maine, 266; *Strickland* v. *Casualty Co.,* 112 Maine, 100. In the latter case it is said, "that statements in the application untrue in fact vitiated the policy is settled law." The defendant contends that the application said McManus was a hotel proprietor and teaming contractor, supervising only. It was admitted that he operated a summer hotel or boarding house, but claimed that he was also a farmer and a teamster; and if so, the policy was void, and for two reasons: (1)

because the answer was untrue, and (2) because the occupations of farming and teaming were classified by the defendant in its manual as more hazardous than was stated in the application. On this issue, touching the truth of the application, the defendant was allowed to go back in the introduction of testimony to September, 1912, fourteen months before the date of the application, to show what the occupations of the insured were during that time, and numerous witnesses testified that he was then both a farmer and a teamster, the defendant relying upon the presumption of the continuance of such occupation. 16 Cyc. Evidences, 1052-54; Greenleaf Evidences, Par. 41. The defendant then offered three exhibits. They were all applications of McManus to the Prudential Insurance Company of America for the reviving of policies on his life previously issued by that company which had lapsed for non-payment of premiums. They were dated November 14, 1912; July 11, 1913; and October 24, 1913, respectively. That dated October 24, 1913, being within 10 days of the date of the application upon which the policy in suit was issued. McManus was called upon in each of these applications to state what his occupation was at the time of the application and, in each, said he was a farmer. These exhibits were offered to corroborate the witnesses who had testified that McManus was a farmer; they were excluded. The question, therefore, is, whether the admissions of the insured was admissible against his beneficiary. If McManus were living and had brought an action on the policy to recover a sick benefit, no doubt the Prudential applications would have been admissible against him. Is his widow and beneficiary so in privity with him that they are admissible against her? This is the only question on this branch of the case. And this further depends upon the inquiry whether the widow and beneficiary by the terms of the policy had a vested interest in the policy. Article 20 (d) of the policy provides that "the consent of the beneficiary shall not be requisite to the surrender of this policy nor to a change of beneficiary." It is claimed that this provision is decisive of the question at issue. The line of demarcation between a vested interest and a contingent interest in a life or accident policy is found in the terms of the contract. This line is also usually found in the character of the policy. The old line policies usually create a vested interest; the fraternal policies, it may be said, usually do not. If

the policy reserves no right of control in itself or in the procurer, over the interest provided for the beneficiary, the policy, the moment it is issued, creates a vested interest in the beneficiary therein named. This was expressly held in *Laughlin* v. *Norcross,* 97 Maine, 33. If the contract reserves the right to modify the policy or change the beneficiary without the consent of the beneficiary, then it creates a mere expectency. "A vested interest is where there is an immediate fixed right of present or future enjoyment." See Vested Interest, Words and Phrases, Vol. 8, 7303. Again, "it is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which makes the difference between a vested and a contingent interest," id. Again, "Vested interest can mean nothing else than an interest in respect of which there is a fixed right of present or future enjoyment." id., 7304. In 29 Cyc., 126 C., under the head "Right to Make Change as Against Original Beneficiary," it is said: "The cases as to the right of a member of a beneficiary society as against the person originally designated by him, to substitute another beneficiary in place of that person, are not in accord. By the weight of authority, however, if there is nothing to the contrary in the statute, or in the society's charter or laws, or in the certificate of insurance, the beneficiary originally designated has no vested interest in the contract, and hence the member may at his pleasure designate a new beneficiary and thus defeat the original beneficiary's contingent right to benefits." See numerous cases cited under note 19. "In any event this is so where the statutes, the charter or laws of the society, or the certificate of insurance expressly or impliedly authorizes a change of beneficiaries." A case in point, cited in Cyc. is *Marsh* v. *American Legion of Honor,* 149 Mass., 1889. The policy issued in this case reserved the right to make a change in the beneficiary. Such change was made and the right contested by one who had been named in the policy as a beneficiary. Regarding the right of this claim, the court say: "In the certificates of a beneficiary association which are issued to a holder, and which authorize him to designate another beneficiary than the one originally named, the holder may make such changes as the law of the association permits within the limits of those classes for whom, by statute, such association may provide. All that a beneficiary has during the life time of the member who

holds the certificate is a mere expectency, which gives no vested right in the anticipated benefit, and is not property, as, owing to his right of revocation, it is dependent on the will and pleasure of the holder." After alluding to some cases which seem to hold that the beneficiary is as a rule not bound by the admission of the insured, 2 Bacon on Benefit Societies, etc., Par. 460 states the rule as follows: "The better view and that logically correct, is that the contrary is true because the member is the party with whom the contract is made and remains so until his death. Consequently up to that time he is the only party in interest and his admissions and declarations are clearly admissible against the beneficiary. The authorities cited in this work recognized the distinction between cases where one has and has not a vested right in the policy.

The general principle seems to be overwhelmning in favor of the rule that where a beneficiary has a vested interest in the policy the admissions or statements of the applicant for the policy are inadmissible; where the beneficiary has not a vested interest, such admissions or statements are admissible.

If, then, it is true that the applications offered in evidence as exhibits were statements made by McManus, they were admissible, not necessarily as admissions nor as declarations against interest but as evidence tending to prove whether his statement as to his occupation was true or false; whether he was telling the truth in fact; whether he was a farmer or a hotel keeper. The issues directly involved in this exception are (1) Was McManus a farmer? (2) Did he tell the truth in his application as to his occupation? The evidence is pertinent under the first issue, as the limit of insurance on a farmer in this company was $1500 instead of $5000. The evidence offered was material upon the second issue because his statements in the application according to the contract were warranties, and if false, would defeat the policy. The question here is, whether these exhibits were competent. We have nothing to do with their weight. That is a question for the jury.

The plaintiff, however, objects to the admission of the exhibits on several grounds, among others that the offer was unaccompanied with any evidence that the exhibits comprised statements made actually by Mr. McManus. But the exceptions do not sustain her contention. They show that all the applications were signed by

Mr. McManus but that two of the three were filled in by an insurance agent. The necessary inference is that the other was executed by McManus in the usual way. Without giving effect to the rule, that when a party signs a written contract he is presumed to understand its contents, one of the three exhibits,—and the evidence does not show which one,—must be regarded as containing statements actually made by McManus.

The plaintiff further contends that the exhibits were properly excluded under the express wording of the policy. Under the head, General Agreements, the part of Article 20, invoked by the plaintiff, reads as follows: "No agent has any authority to change this policy or to waive any of its provisions, conditions or limitations. No statement made by the assured shall void this policy or be used in evidence unless endorsed hereon and no provision of the charter, constitution or by-laws, shall be used in defense with any claim under this policy unless such provision is incorporated in full in this policy. Then there is a further provision that the policy with a copy of the application therefor signed by the assured, and any riders or endorsements signed by the president or secretary shall constitute the entire contract of insurance, etc. Construed in pari materia with reference to the subject matter, the purpose, the results to be effectuated and the consequences, the true interpretation of these provisions is that the assured while negotiating for his policy and doing the things which resulted directly in its execution and issue, shall be regarded as having been incorporated in the policy, and that any statement which he has made during these negotiations which are presumed to be embodied in the writing when the policy is issued, shall not be offered in evidence. This is practically a declaration of the common law rule, that a written contract is presumed to be the consummation of everything said and done leading up to it. It is not reasonable that, by these provisions, the defendant company intended to preclude itself from the use of any relevant testimony pertinent upon any issue, that might be raised under the provisions of the policy. The policy provides that material statements made in the application shall be regarded as warranties. It further provides that if any material statement is not true it avoids the policy. It would be pertinent under these provisions for the company to show in defense to an action on a policy, that statements

made in the application were false regarding occupation or the other material matters prescribed therein. Any evidence tending to prove this contention would be admissible. The statements made by the assured, within a reasonable time, whether before or after the issue of his policy, tending to contradict him and to corroborate other witnesses as to the truth or falsity of the representation made in his application, might be the best evidence of proof of the issue; whatever its value it would be admissible under the general rules of evidence, and the interpretation of the provisions of the policy, involved to exclude it, cannot be sustained.

We are of the opinion that, under the exceptions, as stated in the report all three of the applications offered as exhibits, were, in the first instance, admissible. They were all signed by McManus, which makes them prima facie evidence. They are, of course, subject to explanation and their probative force may thereby be shown to be of very little weight, or even valueless. Other exceptions were raised and argued; but those considered being decisive of the case, it is unnecessary to discuss them.

*Exceptions sustained.*